## J. E. WALTON v. ELIZABETH WALTON.

1. HABITUAL DRUNKARD; *Divorce.* A man who drinks to excess may be an habitual drunkard within the meaning of the divorce laws, although there are intervals when he refrains entirely from the use of intoxicating drinks. But before he can be regarded as an habitual drunkard, it must appear that the practice of drinking to excess is indulged in so frequently as to become a fixed habit with him.

2. ———— *Habitual Drunkard, When.* A person who frequently drinks to excess, and who becomes intoxicated whenever the temptation is presented and the opportunity is afforded him, is an habitual drunkard in

the sense in which this expression is used in the statute relating to divorce.

3. ———— Evidence examined, and *held* to be sufficient to sustain the finding of the court that the defendant is an habitual drunkard.

*Error from Allen District Court.*

ACTION for a divorce, brought by *Elizabeth Walton* against *J. E. Walton.* April 22, 1884, decree for plaintiff. The defendant brings the case here. The facts are stated in the opinion.

C. F. Hutchings, for plaintiff in error.

G. P. Smith, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by Elizabeth Walton in the district court of Allen county, to obtain a divorce and alimony from her husband, J. E. Walton. The causes for divorce alleged in her petition were habitual drunkenness, gross neglect of duty, and extreme cruelty. The court tried the case without the intervention of a jury and found in favor of the plaintiff upon one ground, viz.: habitual drunkenness. Upon this ground the court found and stated the facts as follows:

"The plaintiff and defendant were married in Bureau county, Illinois, in August, 1874, and resided there until sometime in February, 1881, when they came to Kansas, and located in Allen county in said state. During the time the parties lived in Illinois as husband and wife, defendant used intoxicating liquors to excess. Sometimes he would be drunk two or three weeks at a time. For the first three months that the parties lived in Kansas, the defendant in a great measure refrained from the use of intoxicating liquors, and generally his habits of intoxication were not so gross in Kansas as they were in Illinois; but after the lapse of said three months, said defendant, while living in Kansas, has used intoxicating liquors to excess, and has been an habitual drunkard. When he went to town he would drink intoxicating liquors and then come home in a state of intoxication; and he would bring home whisky in bottles and jugs, and keep it in the house or out

in the stable, and as long as the whisky lasted he would be in a state of intoxication. While the defendant was in such condition he was incapacitated from attending to his business, and he was very quarrelsome and irritable with the plaintiff. On or about August 14, 1883, the defendant went to the city of Humboldt and returned to his house in a state of intoxication; he was quarrelsome and violent to the plaintiff, and ordered her to leave his house, which she did, taking with her the little girl Dora, and said plaintiff has remained away from said defendant ever since. At the time plaintiff married defendant, she did not know he was addicted to the use of intoxicating liquors."

As a conclusion of law, the court found that the plaintiff was entitled to a divorce on account of the habitual drunkenness of defendant, and so decreed. The defendant excepted to the findings of the court, and brings the case here for review.

The chief complaint he makes is, that the findings are not supported by the evidence, and are contrary to law. The testimony in regard to the intemperate habits of the defendant, and the degree of his indulgence in intoxicating drinks, is conflicting. The testimony of the plaintiff is to the effect that, with the exception of a short interval in 1881, the defendant has drank to excess and intoxication with great frequency ever since their marriage in 1874. It appears that they have always resided upon a farm and some distance away from any town; and she states that his practice, with a few exceptions, has been to get drunk as often as he went to town where liquor could be found; that he usually visited town as often as once a week, and some weeks he went there as often as two or three times. She testified that he not only came home intoxicated, but that he generally brought liquor home with him, and his intoxication would continue sometimes for several days, and always until the liquor was drank up. In this testimony the plaintiff is corroborated to some extent by other witnesses.

The defendant, while admitting that he occasionally drank to excess, and became intoxicated, denied that the practice was frequent or habitual with him. He produced several of

his neighbors as witnesses, who testified that they had not seen him in a state of intoxication; but negative testimony of this character is not always entitled to great consideration. Its value depends largely upon the intimacy of the witnesses with the person whose conduct is in question, their intelligence and their opportunity to observe his habit. In this case some of the witnesses were intimate with the defendant and saw him frequently, but several of them who testified that they had never seen him in a drunken condition, only saw him occasionally, and had little opportunity to learn what his habits were, and their testimony, therefore, is not entitled to great weight. The weight and sufficiency of this and other testimony, however, was a question for the court below. Its finding, like the verdict of a jury, where there is legal testimony to sustain it, will not be disturbed by this court; and without doubt the testimony offered by the plaintiff fairly tends, and under the rule stated must be held to be sufficient, to sustain the finding made by the court.

It is further contended by the defendant that the facts do not support the conclusion of the court, that defendant was an habitual drunkard, within the meaning of that expression as used in the statute relating to divorce. A precise definition of this expression applicable to every case cannot well be given. It is true, as argued by the defendant, that a man may drink occasionally to excess, and yet not be an habitual drunkard; but to constitute him one, it is not necessary that he should be constantly under the influence of intoxicating liquors. A man may be an habitual drunkard even though there be intervals when he entirely refrains from the use of intoxicating drinks. But before he can be regarded as such, it must appear that he drinks to excess so frequently as to become a fixed practice or habit with him. From the facts found by the court, it appears that the defendant could not resist the temptation of drinking to excess whenever he had an opportunity to obtain liquor. And where a person indulges in the practice of becoming intoxicated whenever the temptation is presented, and the

*Habitual drunkard, when—when not; divorce.*

A. T. & S. F. Rld. Co. v. Davis.

opportunity is afforded him, it may safely be said that he is an habitual drunkard within the meaning of the statute relating to divorce. (*Ludwick v. The Commonwealth,* 18 Pa. St. 172; *State v. Pratt,* 34 Vt. 223; *Magahey v. Magahey,* 35 Mich. 210; *Blaney v. Blaney,* 126 Mass. 205.)

Some other objections to the judgment are suggested by the defendant, but accepting the findings of the trial court, as we do, we are unable to find any error in the record that will justify a reversal. The judgment will be affirmed.

All the Justices concurring.